1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7  ADRIANNA R. BATTLES,

8                      Plaintiff,              NO:  2:14-CV-0040-TOR

9        v.                                    ORDER GRANTING DEFENDANT'S
                                               MOTION FOR SUMMARY
10  CAROLYN W. COLVIN, Acting                  JUDGMENT
    Commissioner of Social Security
11  Administration,

12                      Defendant.

13        BEFORE THE COURT are the parties' cross-motions for summary

14  judgment.  ECF Nos. 13, 17.  Plaintiff is represented by Joseph M. Linehan.

15  Defendant is represented by Sarah L. Martin.  The Court has reviewed the

16  administrative record and the parties' completed briefing and is fully informed.

17  For the reasons discussed below, the Court grants Defendant's motion and denies

18  Plaintiff's motion.

19  //

20  //

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is limited:  the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

### FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

1   416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

2   Commissioner must find that the claimant is not disabled.  20 C.F.R.

3   §§ 404.1520(b), 416.920(b).

4       If the claimant is not engaged in substantial gainful activities, the analysis

5   proceeds to step two.  At this step, the Commissioner considers the severity of the

6   claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

7   claimant suffers from "any impairment or combination of impairments which

8   significantly limits [his or her] physical or mental ability to do basic work

9   activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

10  416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

11  however, the Commissioner must find that the claimant is not disabled.  *Id.*

12      At step three, the Commissioner compares the claimant's impairment to

13  several impairments recognized by the Commissioner to be so severe as to

14  preclude a person from engaging in substantial gainful activity.  20 C.F.R.

15  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe as or more

16  severe than one of the enumerated impairments the Commissioner must find the

17  claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

18      If the severity of the claimant's impairment does meet or exceed the severity

19  of the enumerated impairments, the Commissioner must pause to assess the

20  claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

1  defined generally as the claimant's ability to perform physical and mental work

2  activities on a sustained basis despite his or her limitations (20 C.F.R.

3  §§ 404.1545(a)(1), 416.945(a)(1)), is relevant to both the fourth and fifth steps of

4  the analysis.

5         At step four, the Commissioner considers whether, in view of the claimant's

6  RFC, the claimant is capable of performing work that he or she has performed in

7  the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv),

8  416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the

9  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

10  404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the

11  analysis proceeds to step five.

12         At step five, the Commissioner considers whether, in view of the claimant's

13  RFC, the claimant is capable of performing other work in the national economy.

14  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination,

15  the Commissioner must also consider vocational factors such as the claimant's age,

16  education and work experience.  *Id.*  If the claimant is capable of adjusting to other

17  work, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

18  §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to

19  other work, the analysis concludes with a finding that the claimant is disabled and

20  is therefore entitled to benefits.  *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ FINDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income on May 19, 2011 Tr. 149–55, 156–62. Plaintiff's claims were denied initially and upon reconsideration. Tr. 109–12, 113–15, 119–20, 121–22. Plaintiff requested a hearing before an ALJ which was held on September 18, 2012. Tr. 32–70. The ALJ rendered a decision denying Plaintiff disability benefits on October 12, 2012. Tr. 10–22.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2008. Tr. 12. At step two, the ALJ found that Plaintiff had the following severe impairments:

> morbid obesity; polycystic ovarian disease; mild degenerative changes of the anterior cruciate (AC) joint and supraspinatus tendinosis of the shoulder; right patellofemoral and medial femorotibial osteoarthritis; mild degenerative disc disease of the cervical spine; mild to moderate degenerative vertebral spondylosis in the lower thoracic spine; chronic myofascial pain; thoracolumbar sprain/contusions, right hip

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

1    strain/contusion, right knee effusion, and right ankle sprain, status
2    post mechanical fall; diabetes mellitus II; and asthma associated with
     possible early chronic obstructive pulmonary disease secondary to
3    smoking (20 CFR 404.1520(c) and 416.920( c)).

4    Tr. 12–13.  At step three, the ALJ found that Plaintiff did not have an impairment

5    or combination of impairments that met or medically equaled a listed impairment.

6    Tr. 14.  The ALJ then concluded that Plaintiff had the RFC to

7        perform sedentary work as defined in 20 CFR 404.1567(a) and
         416.967(a) with the additional following limitations:  no more than
8        occasional postural movements of climbing stairs, balancing, and
         stooping; no postural movements of climbing ladders, kneeling,
9        crouching, and crawling; and avoidance of concentrated exposure to
         extreme temperatures, vibration, respiratory irritants, and hazards.
10

11   Tr. 14.  The ALJ found, at step four, that Plaintiff was able to perform past relevant

12   work as a telemarketer.  Tr. 21.  On that basis, the ALJ concluded that Plaintiff was

13   not disabled as defined in the Social Security Act, and did not proceed to step five.

14   Tr. 21.

15       The Appeals Council denied Plaintiff's request for review on December 19,

16   2013, making the ALJ's decision the Commissioner's final decision for purposes

17   of judicial review.  Tr. 1–4; 20 C.F.R. §§ 404.981, 416.1484, 422.210.

18                                   ISSUES

19       Plaintiff raises three issues for review.  First, whether the ALJ erred in

20   evaluating Plaintiff's credibility.  ECF No. 13 at 13–14.  Second, whether the ALJ

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

failed to properly consider and reject the testimony of Plaintiff's treating physician.
*Id.* at 9–12. Third, whether the ALJ erred at step three by not finding that
Plaintiff's impairments met or medically equaled a listed impairment. *Id.* at 12–13.

DISCUSSION

A. Plaintiff's Credibility

Plaintiff contends that "the ALJ did not properly consider nor reject her
testimony regarding her limitations from her impairments." ECF No. 13 at 13.
Plaintiff argues that the "ALJ did not specifically state why [Plaintiff's] testimony
regarding her limited ability to sit, stand, and walk, as well as her need to change
position frequently and elevate her legs, was not credible and what facts in the
record led to that conclusion." *Id.* at 13–14. Plaintiff also argues that the ALJ
misconstrued her testimony regarding daily activities. *Id.* at 14. Were this
testimony credited, Plaintiff contends, she is much more limited in her RFC than
the ALJ concluded. *Id.*

In social security proceedings, a claimant must prove the existence of a
physical or mental impairment with "medical evidence consisting of signs,
symptoms, and laboratory findings." 20 C.F.R. §§ 416.908, 416.927. A claimant's
statements about his or her symptoms alone will not suffice. 20 C.F.R. §§
416.908, 416.927. Once an impairment has been proven to exist, an ALJ "may not
reject a claimant's subjective complaints based solely on a lack of objective

medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment.  *Id.*  This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured."  *Id.* at 347 (quotation and citation omitted).

However, an ALJ may conclude that the claimant's subjective assessment is unreliable, so long as the ALJ makes "a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see also Bunnell*, 947 F.2d at 345 ("[A]lthough an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion.").  If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing."  *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted).  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

1    Here, the ALJ found that the medical evidence confirmed the existence of

2    medical impairments which could reasonably be expected to cause the alleged

3    symptoms.  Tr. 15.  However, the ALJ did not credit Plaintiff's testimony about the

4    intensity, persistence, and limiting effects of the symptoms.  There is no evidence

5    of malingering in this case, and therefore the Court must determine whether the

6    ALJ provided specific, clear and convincing reasons not to credit Plaintiff's

7    testimony of the limiting effect of his back and neck pain.  *Chaudhry*, 688 F.3d at

8    672.  The Court concludes that the ALJ did provide specific, clear and convincing

9    reasons.

10    The ALJ provided a number of reasons for concluding that Plaintiff's

11    testimony was not credible.  First, the ALJ concluded that Plaintiff's daily

12    activities "detract[ed] from the severity of her allegations and support her abilities

13    to perform work related activities . . . ."  Tr. 15.  The ALJ found that Plaintiff's

14    ability to take her children to school, do housework, and run errands displayed

15    "more exertional and postural abilities than she alleged."  *Id.*  In evaluating the

16    credibility of a claimant's testimony, an ALJ may properly consider "whether the

17    claimant engages in daily activities inconsistent with the alleged symptoms."

18    *Molina*, 674 F.3d at 1113 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th

19    Cir. 2007)).  "Even where those activities suggest some difficulty functioning, they

20    may be grounds for discrediting the claimant's testimony to the extent that they

1  contradict claims of a totally debilitating impairment." *Id.*  The ALJ did not err in

2  concluding that Plaintiff's testimony about her daily activities demonstrated greater

3  postural and exertional ability than the severe limitations claimed.

4       The ALJ also concluded that Plaintiff's noncompliance with her medical

5  treatments further detracted from the severity of the symptoms she alleged.

6  Specifically, the ALJ observed that Plaintiff's noncompliance with her treating

7  physician, Dr. Duncan Lahtinen's recommendation that she stop smoking detracted

8  from the severity of her breathing allegations.  Tr. 16.  The Court's review of the

9  record indicates that Plaintiff reported smoking one and a half packs of cigarettes a

10  day in March 2009 and that treatment records as recently as 2011 continue to

11  report this usage, suggesting that it has not changed.  *See, e.g.*, Tr. 405 (original

12  report), 330 (May 2011, same amount reported), 439 (December 2011, reported

13  that Plaintiff is current smoker, no amount given).  Moreover, Dr. Lahtinen

14  specifically notes how Plaintiff has continued to smoke despite his strong

15  encouragement that she not.  *See, e.g.*, Tr. 367 (August 2010, Plaintiff "continues

16  to smoke cigarettes in spite [sic] of being advised not to"), 331 (February 2011, Dr.

17  Lahtinen "strongly encouraged her to avoid tobacco"), 455 (September 2011, "She

18  is to discontinue tobacco use").  Such an inadequately explained failure to follow a

19  prescribed course of treatment "can cast doubt on the sincerity of the claimant's

20  [symptom] testimony."  *Fair v. Brown*, 885 F.2d 597, 603 (9th Cir. 1989).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

The ALJ also noted that Plaintiff has been noncompliant with her insulin treatment for her diabetes mellitus which is consistent with uncontrolled nature of her diabetes. Tr. 16. In August 2011, Plaintiff informed Dr. Lahtinen that she had taken herself off insulin and was not treating her diabetes. Tr. 463 (also noting that Plaintiff "hasn't been taking her [blood pressure medications] as she should have"). Dr. Lahtinen restarted her on insulin. Tr. 464. However, in May 2012, Plaintiff again reported she was not taking the prescribed amount of insulin. Tr. 510. The ALJ concluded this raised questions about her ongoing non-compliance, but the ALJ nevertheless accommodated the symptoms of her diabetes in her RFC. Tr. 16.

Finally, the ALJ examined the objective medical evidence and concluded that it "simply does not support [Plaintiff's] testimony and statements regarding her allegations of debilitating limitations and symptomatology." Tr. 16. The ALJ then thoroughly reviewed the radiological and clinical findings which indicated only mild to moderate musculoskeletal impairments. Tr. 16–20. The ALJ also noted that Plaintiff's symptoms improved while she participated in physical therapy. Tr. 19. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

1   The ALJ recognized Plaintiff's impairments in assigning a sedentary RFC, but did

2   not credit Plaintiff's claims that her symptoms severely limited her functionality.

3   Tr. 19–20.  The ALJ's decision provides specific, clear and convincing reasons

4   supported by substantial evidence sufficient for this Court to conclude that the

5   adverse credibility determination was not arbitrary.  Thus, there has been no

6   showing of any error affecting the ALJ's RFC finding.

7                                B. Treating Physician Opinion

8          Plaintiff contends "the ALJ did not properly consider nor reject Dr.

9   Lahtinen's opinion regarding her physical limitations."  ECF No. 13 at 10–11.

10  Specifically, Plaintiff argues "the ALJ did not set forth the requisite specific and

11  legitimate reasons supported by substantial evidence in the record for rejecting Dr.

12  Lahtinen's opinion."  *Id.* at 12.  If the ALJ had credited this opinion, Plaintiff

13  continues, "the ALJ would have to determine that [Plaintiff] was much more

14  limited from a physical standpoint and, in fact, disabled based on Dr. Lahtinen's

15  medical source statement."  *Id.*

16         A treating physician's opinions are entitled to substantial weight in social

17  security proceedings.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

18  (9th Cir.2009).  If a treating or examining physician's opinion is uncontradicted, an

19  ALJ may reject it only by offering "clear and convincing reasons that are supported

20  by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

2005).  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

On September 17, 2012, Dr. Lahtinen completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" providing a functional assessment of Plaintiff.  Tr. 537–42.  The ALJ observed that Dr. Lahtinen's assessment was not consistent with the objective and radiological findings in the record, and that it was inconsistent with the evaluation of limitations provided by another treating physician, Dr. Patrick Soto.  Tr. 20.  As a contradicted opinion, the Court must determine whether the ALJ, in assigning Dr. Lahtinen's opinion limited weight, provided specific and legitimate reasons supported by substantial evidence.  The Court concludes the ALJ did provide specific and legitimate reasons.

First, the regulations direct ALJs to give more weight to the opinions of specialists relating to their specialty than the opinions of nonspecialists.  20 C.F.R. § 404.1527(c)(5); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  Thus, the ALJ properly assigned more weight to the opinion of Dr. Soto as "a specialist in the area of rehabilitation to whom Dr. Lahtinen specifically referred [Plaintiff] for treatment."  Tr. 20.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

1    Second, the ALJ assigned little weight to Dr. Lahtinen's opinion of

2  Plaintiff's severely limited ability to sit, stand, and walk, because "Dr. Lahtinen

3  did not provide any basis or findings to support this assessment" and because "it is

4  inconsistent with the . . . evidence in of record."  Tr. 20.  An ALJ need not accept a

5  physician's opinion that is "brief, conclusory and inadequately supported by

6  clinical findings."  *Bray*, 554 F.3d at 1228 (quotation and citation omitted).  The

7  form completed by Dr. Lahtinen, consisting primarily of check boxes, did not

8  provide any basis for Dr. Lahtinen's conclusions.  The ALJ properly considered

9  the lack of medical record support in assigning Dr. Lahtinen's opinion little

10  weight.

11    Finally, the ALJ assigned the opinion little weight because it "appears to be

12  based on the [Plaintiff's] subjective complaints rather than objective findings."  Tr.

13  20.  An ALJ may reject a treating physician's opinion which is "based to a large

14  extent on a claimant's self-reports that have been properly discounted as

15  incredible."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (internal

16  and quotation and citation omitted).  As discussed above, the ALJ provided clear

17  and convincing reasons not to credit Plaintiff's subjective complaints of the

18  severity of her symptoms.  The ALJ did not err by assigning little weight to Dr.

19  Lahtinen's opinion based upon its reliance on Plaintiff's subjective statements.

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

It is the ALJ's duty to resolve conflicting medical opinion.  *Thomas*, 278 F.3d at 956.  Here, the ALJ set out a detailed and thorough examination of the record and conflicting opinions, stated her interpretation of the evidence, and made specific findings.  The ALJ provided specific and legitimate reasons to assign little weight to the functional assessment of Dr. Lahtinen in favor of significant weight assigned to the conflicting opinions of Dr. Soto and the testifying medical expert.  Thus, there has been no showing of any error affecting the ALJ's RFC finding.

## C. Step Three Analysis

Plaintiff contends that the ALJ erred by concluding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Specifically, Plaintiff argues that the opinions of Dr. Lahtinen and the testifying medical expert, Dr. Anthony E. Francis, demonstrate that Plaintiff "meets or equals listings 1.02(a) [sic] and 1.04(A)."  ECF No. 18 at 5.

The burden was upon the claimant to demonstrate that an impairment or combination of impairments meets or equals a listing.  *Burch v. Barnhart*, 400 F.3d 676, 679, 683 (9th Cir. 2005).  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).  "For a claimant to qualify for benefits by showing that his unlisted impairment, or

1   combination of impairments, is 'equivalent' to a listed impairment, he must present

2   medical findings equal in severity to *all* the criteria for the one most similar listed

3   impairment." *Id.* at 531 (emphasis in original).

4       Listing 1.02(A) requires the claimant to show major dysfunction of joints

5   due to any cause, but characterized by "gross anatomical deformity" and "chronic

6   joint pain and stiffness with signs of limitation of motion or other abnormal motion

7   of the affected joint(s), and findings on appropriate medically acceptable imaging

8   of joint space narrowing, bony destruction, or ankyloses of the affected joint(s)."

9   20 C.F.R. § 404, Subpt. P, App. 1.  It also requires a showing of "[i]nvolvement of

10  one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in

11  inability to ambulate effectively, as defined in 1.00B2b . . . ." *Id.*  Listing 1.04(A)

12  requires the claimant to show a disorder of the spine "resulting in compromise of a

13  nerve root . . . or the spinal cord" with "[e]vidence of nerve root compression

14  characterized by neuro-anatomic distribution of pain, limitation of motion of the

15  spine, motor loss (atrophy with associated muscle weakness or muscle weakness)

16  accompanied by sensory or reflex loss and, if there is involvement of the lower

17  back, positive straight-leg raising test (sitting and supine) . . . ." *Id.*

18      Plaintiff has not specifically articulated how she meets all the criteria of

19  either listing.  Instead, Plaintiff contends only that "[t]he opinion of Dr. Lahtinen

20  demonstrates the inability of [Plaintiff] to ambulate effectively," that Dr. Francis

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

relied upon this opinion at the hearing, and that the ALJ's "analysis is only

supported by the wrong interpretation of Dr. Francis' testimony."  ECF No. 18 at

5.  Plaintiff argues that the ALJ misinterpreted the testimony of Dr. Francis

because "Dr. Francis acknowledges that the opinion of Dr. Lahtinen supports a

finding of either 1.02(a) [sic] or 1.04(a) [sic]."  ECF No. 13 at 12.

    At the hearing, Dr. Francis testified:

> Now, this is kind of—this is a case where we don't really, really have
> any clear meat [phonetic].  I mean, what we would be looking at is
> either l.04(a) or l.02(a), which is dysfunction of a major weight-
> bearing joint, either that or radiculopathy listing, we don't have
> enough for that.  The polycystic ovary disease is always sort of
> difficult to deal with because usually those patients are overweight
> and they, you know, tend to do have quite a bit of dysfunction.  But
> now, whether that's not dysfunction to say they can't work or not, it's
> always sort of a, I mean, it's a judgment call as based on the facts of
> the case.
>
> . . . .
>
> There's not enough here to get to a musculoskeletal listing.  We do
> have this late submission opinion that she can't work or is
> unemployable by the treating physician, so, the case is going to come
> down to how much weight, trier of fact places on that particular
> opinion.  If that opinion is held to be credible and ruling, then she's
> going to be probably equal to either a l.04(a) or 1.02(a) just mainly
> based on the weight of that opinion that she can't work or, in the
> alternative, would be at less than sedentary, which is sort of the same
> thing.  Otherwise, there's not enough here to meet or equal a listing.

Tr. 43.  In response to Plaintiff's counsel, Dr. Francis also explained:

> Well, you know, as I said, I mean, I don't think there's any dispute that
> she's got chronic pain.  I mean, she's had chronic musculoskeletal

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

1   pain, and then it just becomes sort of fact driven issue of is there
2   enough information to indicate that she's either going to function at
    less than a sedentary RFC, which we do have one opinion about that,
3   you know, the late submission here or fairly recent submission.  And
    then either that, or is there enough information to justify equaling the
4   l.04(a) or the 1.02(a).  And, you know, it just really depends on the
    case.  It's always helpful to have an opinion from one of the treating
5   physicians or one of those, you know, examiners that claimant is at
    less than sedentary.  That helps justify either a 1.02(a) or a 1.04(a).
6   And I don't have any problem with that.

7   Tr. 46.

8           In short, Dr. Francis testified that determining Plaintiff's RFC would require

9   the ALJ to evaluate the specific facts of the case.  However, contrary to Plaintiff's

10  contention, Dr. Francis did not adopt Dr. Lahtinen's opinion and he remained of

11  the opinion that there was not enough evidence in the record to indicate Plaintiff's

12  impairments met the listings.  Dr. Francis acknowledged the ALJ was free to reach

13  a contrary conclusion "if" the ALJ found Dr. Lahtinen's opinion credible.  *See* Tr.

14  43.  Otherwise, Dr. Francis concluded, "there's not enough here to meet or equal a

15  listing."  Tr. 43.

16          The Court has already discussed how the ALJ properly weighed Dr.

17  Lahtinen's opinion and the ALJ's conclusion that Dr. Lahtinen's opinion should

18  only be assigned little weight.  Because the ALJ concluded that Dr. Lahtinen's

19  testimony as to the extent of Plaintiff's limitations was not credible, Plaintiff failed

20  to produce evidence demonstrating that her impairments met or medically equaled

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

either listing 1.02(A) or 1.04(A).  As such, the ALJ did not err in making her step three finding.

Plaintiff also asserts that the ALJ failed to make "requisite sufficient findings" at step three.  ECF No. 18 at 5.  "It is unnecessary to require the [ALJ], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments" when the ALJ's "'evaluation of the evidence' is an adequate statement of the 'foundations on which the ultimate factual conclusions are based.'"  *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).  In determining Plaintiff's RFC, the ALJ provided a thorough evaluation of the medical evidence and of the opinions of Dr. Lahtinen, Dr. Soto, and Dr. Francis.  Any error to specifically discuss these findings at step three is harmless.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

**DATED** March 16, 2015.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20